IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ALAN J. FROMM, :
    Plaintiff
:

    vs. : CIVIL NO. 1:CV-04-1315

MVM, INC. :
BENINGO G. REYNA, in his official
capacity as Director of the :
United States Marshals Service,
JOHN ASHCROFT, in his official :
capacity as Attorney General of the
United States and chief administrative :
officer of the United States
Department of Justice, :
    Defendants

*M E M O R A N D U M*

I.  *Introduction*

    Plaintiff, Alan Fromm, was a court security officer ("CSO") working at the federal courthouse in Williamsport, Pennsylvania. He was an employee of defendant, MVM, Inc., which had a contract with the United States Marshals Service (USMS) to provide CSOs for the federal courthouses in the Third Circuit. In October 2002, MVM terminated him because he did not meet new hearing standards required by the USMS for CSOs.

    Plaintiff filed this suit contesting his discharge. He named as defendants MVM, the Attorney General of the United States, and the Director of the USMS, making claims under federal and state law, including claims under Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12117; the Rehabilitation Act ("RA"), 29 U.S.C. § 791; and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. §§ 951-963 (West 2009). In two memorandums, we disposed of all the claims. *Fromm v.*

*MVM, Inc.*, 2004 WL 5355973 (M.D. Pa. Dec. 14, 2004), and 2006 WL 133540 (M.D. Pa. Jan. 10, 2006). On appeal, the Third Circuit affirmed in part and reversed in part. *Fromm v. MVM, Inc.*, 371 F. App'x 263 (3d Cir. 2010)(nonprecedential). As to the federal defendants, the court of appeals decided that Plaintiff had no claim against them because he had not exhausted his administrative remedies. *Id.* at 268. As to MVM, the court concluded that there was no evidence that MVM "through its own conduct" regarded Fromm as disabled. *Id.* at 270. However, it remanded for further proceedings on whether MVM could be liable under 42 U.S.C. § 12112(b)(2) by way of its contractual agreement with the USMS for having subjected Fromm to discrimination prohibited by the ADA.[1] This requires a determination of whether the USMS regarded Fromm as disabled because of his hearing limitation.[2]

MVM has moved for summary judgment, contending there is no evidence that the USMS regarded Plaintiff as disabled in the major life activities at issue here, hearing or working. We examine the motion under the well established standard. *See Colwell v. Rite Aid Corp.*, 602 F.3d 495, 500-01 (3d Cir. 2010).

II. *Background*

We take this background from our 2006 memorandum, adding any new evidentiary material submitted in connection with the current motion for summary judgment.

---

[1] The court also ruled that we had erred in granting summary judgment on the disability claims on the basis that Plaintiff could not perform the essential functions of the job. The Third Circuit decided that Plaintiff had created a material issue of fact in that regard. *Id.* at 269.

[2] As the Third Circuit noted, Plaintiff cannot rely on a showing of actual disability because the case is governed by *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), and Plaintiff's "hearing impairment is mitigated by corrective measures." 371 F. App'x at 267 n.2. In response to *Sutton*, Congress changed the law by way of the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553, 3553-59.

2

The USMS provides security for federal courthouses. It carries out this mission by contracting with private companies to provide that security. MVM has the contract for the Third Circuit and provides security at federal courthouses in Pennsylvania, including the United States Courthouse in Williamsport.

MVM has to provide employees who meet the medical requirements established by the contract. A CSO has to undergo a pre-employment medical examination and meet the medical standards to qualify for the position. He must also undergo an annual physical examination to remain qualified.

The medical standards for CSOs applicable to this case were developed and implemented in January of 2001 as a result of a CSO functional job analysis conducted by the U.S. Public Health Service's Federal Occupational Health (FOH), Law Enforcement Program, at the behest of the United States Judicial Conference's Security and Facilities Committee. Richard Miller, M.D., who was then the director of law enforcement medical programs within FOH, conducted the study. The goal was to identify the essential job functions of the CSO position and then to recommend whether any changes needed to be made to the CSO medical standards or procedures.

Among the twenty-nine essential CSO job functions identified in Dr. Miller's report, there were six specific to the ability to hear: 1) comprehend speech during face-to-face conversations, 2) comprehend speech during telephone conversations, 3) comprehend speech during radio transmissions, 4) comprehend speech when you cannot see another CSO, 5) hear sounds that require investigation, and 6) determine the location of sound.

To ensure that CSOs would be capable of performing these essential job functions, Dr. Miller proposed audiological standards. Under these standards, approved

3

by the Judicial Conference, a CSO is permitted to wear hearing aids on the job, but must first pass the required hearing tests unaided.[3]

In January 2002, Fromm underwent his annual medical examination. In April 2002, the reviewing physician concluded that Fromm's hearing-test findings "may hinder safe and efficient performance of essential job functions." Fromm was advised to have further testing and did have a second audiological examination.

In October 2002, Dr. Louis Chelton, a reviewing physician for the USMS, reviewed the tests and filled out another medical review form, finding that Plaintiff had: (1) a "significant hearing loss in the conversational range"; (2) a "decreased ability to hear soft sounds and to distinguish speech with [the] right ear"; and an inability to "effectively localiz[e] the direction of sound, an essential job function." The form gave notice to Fromm that his "impairment in performing these essential law enforcement functions poses a significant risk to the health and safety of yourself, other law enforcement officers, and the public." On the form, Fromm's status was changed to "Not medically qualified to perform the essential functions of the job". (Doc. 94-15, Ex. 12).

By letters dated October 10 and 11, 2002, USMS representatives notified MVM that Plaintiff was "medically disqualified" from being a CSO and a "replacement package" was requested. On October 17, 2002, MVM dismissed Fromm from employment.

John F. Kraus, the USMS Chief of Judicial Security Contracts and the signatory on the MVM contract on behalf of the USMS, issued a memo dated June 7, 2002, to MVM and two other CSO contracting businesses. In pertinent part, the memo read: "I was asked to forward you the attached 'Hearing Standards' information.

---

[3] It appears that a CSO can now take the test using a hearing aid, *see Fraterrigo v. Akal Security, Inc.*, 376 F. App'x 40, 42 (2nd Cir. 2010)(nonprecedential), but that is not the standard applicable to this case.

Hopefully this document will further assist you in understanding the hearing requirements in the Court Security Officer (CSO) contracts. As we are well aware, adequate hearing is essential to ensure that the CSOs are able to protect themselves, the public and the judiciary." (Doc. 99-2, CM/ECF p. 1).

Attached to the memo is a document slightly longer that two pages which discusses the importance of "adequate hearing" to "law enforcement officers", "law enforcement personnel, and "armed law enforcement." In part, the document focuses on the importance to persons engaged in law enforcement to comprehend speech in quiet and noisy situations, "probably the most critical task in law enforcement," and the "critical skill" of being able to localize sound. The document goes on to state how "[a]ny physical or medical standard must accurately reflect the demands of the job" and that law enforcement officers "were asked to identify the functions or skills that they considered essential for the safe and effective performance of the duties and responsibilities of their particular jobs." (Doc. 99-2, CM/ECF pp. 2-3).

III. *Discussion*

We look to the ADA for the relevant law[4] and as it was in effect at the time of Plaintiff's termination.

> To establish a prima facie case of discrimination, a plaintiff must show (1) that he is disabled within the meaning of the ADA, (2) that he is otherwise qualified for the job, with or without reasonable accommodations, and (3) that he was subjected to an adverse employment decision as a result of discrimination.

*Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010). In pertinent part, "disability" is defined as those with "a physical or mental impairment that substantially

---

[4] As the Third Circuit noted on appeal, the substantive law is the same under all three laws, the ADA, the RA or the PHRA. 371 F. App'x at 269 n.3.

5

limits one or more of the major life activities of such individual," 42 U.S.C.A. § 12102(2)(A)(West 2005), or those who are "regarded as having such an impairment." *Id.* § 12102(2)(C). To prevail on a regarded-as claim, the claim at issue here, "a plaintiff must show that the employer either 'mistakenly believed that [the employee has] a physical impairment that substantially limits one or more major life activities' or 'mistakenly believed that an actual non-limiting impairment substantially limits one or more major life activities.'" *Sulima*, 602 F.3d at 188 (quoting *Wilson v. MVM, Inc.*, 475 F.3d 166, 179 (3d Cir. 2007))(brackets in *Sulima*). Hearing and working are major life activities. *Id.* at 185 (quoting 29 C.F.R. § 1630.2(I)). "A major life activity is substantially limited if an individual is unable to perform it or is '[s]ignificantly restricted as to the condition, manner or duration' under which it is performed, as compared to an average person in the general population." *Id.* (quoting 29 C.F.R. § 1630.2(j)(1)).

    A. *Plaintiff has Failed to Provide Sufficient Evidence to Establish that the USMS Regarded Him as Disabled in the Major Life Activity of Hearing*

MVM moves for summary judgment on Fromm's regarded-as claim based on the major life activity of hearing, arguing there is no evidence that the USMS regarded him as being unable to hear as compared to how unimpaired individuals normally use their hearing in daily life. Defendant cites in *Walton v. U.S. Marshals Service*, 492 F.3d 998, 1007 (9th Cir. 2007)("A substantial limitation on the major life activity of hearing is a severe restriction on the use of an individual's hearing compared to how unimpaired individuals normally use their hearing in daily life."). In *Walton*, the Ninth Circuit held that the plaintiff CSO's failure to meet the hearing requirements for the CSO position was not sufficient evidence to show that the USMS considered him substantially limited in the major life activity of hearing. *Id.* Defendant asserts that Fromm has similarly only shown

6

that he has failed to meet the CSO hearing requirements and that his claim should likewise fail. Defendant cites other cases that have reached the same result involving CSOs who could not satisfy the hearing requirements. *See Leitch v. MVM, Inc.*, 538 F. Supp. 2d 891, 900 (E.D. Pa. 2007); *Hurlbut v. Akal Security, Inc.*, No. 04-121, 2006 U.S. Dist. Lexis 97637, at *23-24 (S.D. Ga. Feb. 15, 2006); *Strolberg v. Akal Security Co.*, No. 03-0004, 2005 WL 5629026, at *12 (D. Idaho Jan. 19, 2005); and *Beck v. United States Marshals Service*, No. 02-1579, 2004 U.S. Dist. Lexis 31110, at *8-9 (W.D. Okla. Nov. 1, 2004).

We agree with Defendant. The only evidence Fromm has is that he cannot meet the USMS's hearing requirements, but this does not support the inference that the USMS regarded him as significantly restricted in his hearing compared to the average person in the general population. In opposition, Plaintiff relies on *Allmond v. Akal Security, Inc.*, No. 05-96, 2007 WL 2904023 (M.D. Ga. Sept. 28, 2007), *aff'd*, 558 F.3d 1312 (11th Cir. 2009), where the district court did decide that Dr. Chelton's medical review form on the plaintiff CSO there created a triable issue of fact on the hearing claim.[5] However, we decline to follow that case.

### B. *Plaintiff Establishes a Valid Regarded-As Claim on the Major Life Activity of Working*

MVM moves for summary judgment on the regarded-as claim based on the major life activity of working. MVM contends that Fromm only has evidence that the USMS regarded him as not being able to do the CSO job, but that this evidence is insufficient to establish Fromm's claim, which requires the plaintiff "to establish that the employer believed that he was limited in his ability to work in 'either a class of jobs or a

---

[5] The court also took into account the defendants' answers to interrogatories stating the plaintiff could not perform certain essential job functions related to hearing.

broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities.'" *Hershgordon v. Pathmark Stores, Inc.*, 285 F. App'x 846, 848 (3d Cir. 2008)(nonprecedential) (quoting *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491, 119 S.Ct. 2139, 2151, 144 L.Ed.2d 450 (1999)). The employer's belief that the plaintiff was unable to do a particular job is not enough. *Id.* MVM relies on cases where courts have ruled that the USMS's belief that a plaintiff CSO could not meet the CSO hearing requirements did not establish that the USMS regarded the plaintiff as disabled from working. *See, e.g., Kemp v. Holder*, 610 F.3d 231, 238-39 (5th Cir. 2010); *Walton*, *supra*, 492 F.3d at 1009; and *Hurlbut*, *supra*, 2006 U.S. Dist. Lexis 97637, at *18-20.

Law enforcement positions can constitute a class of jobs. *Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 764 (3d Cir. 2004). Citing *Williams*, Plaintiff asserts he has sufficient evidence to establish that the USMS regarded him as disabled from doing law enforcement jobs, not just the CSO job. Plaintiff relies on *Allmond*, *supra*, 2007 WL 2904023. In that case, the plaintiff CSO presented the deposition evidence of Dr. Chelton; Dr. Miller; and Thomas Galgon, the USMS's Chief Inspector of Judicial Protective Services. As quoted in the court's memorandum, these witnesses testified that in some respect the CSO hearing requirements apply to law enforcement jobs in general. *Id.* at *9-10. This evidence played a material part in the district court's decision to allow the plaintiff's regarded-as claim to go to trial. *Id.* at *11.

We decline to make these passages from *Allmond* part of the summary-judgment record in this case. As MVM notes, it is not evidence, and Plaintiff has not provided us with the actual deposition testimony. Further, Plaintiff has not cited any authority allowing us to consider quoted material from another case as evidence.

Plaintiff also relies on Dr. Chelton's October 2002 medical review form where Dr. Chelton says that Plaintiff's inability to meet the hearing requirements is an impairment in Plaintiff's ability to perform "essential law enforcement functions," and did not limit the statement to the CSO job. We do not believe this statement is probative as it does not say whether the USMS considered Fromm substantially limited in the major life activity of working. *Walton*, *supra*, 492 F.3d at 1007.

Finally, Plaintiff relies on the June 2002 memo sent by John F. Kraus, the USMS Chief of Judicial Security Contracts, to MVM and two other CSO contracting businesses. As noted, the memo was purportedly sent to assist the contractors in understanding the hearing requirements in the CSO contracts.

Attached to the memo is a document slightly longer that two pages which discusses the importance of "adequate hearing" to "law enforcement officers", "law enforcement personnel, and "armed law enforcement." In part, the document focuses on the importance to persons engaged in law enforcement to comprehend speech in quiet and noisy situations, described as "probably the most critical task in law enforcement," and the "critical skill" of being able to localize sound. The document goes on to state how [a]ny physical or medical standard must accurately reflect the demands of the job" and that law enforcement officers "were asked to identify the functions or skills that they considered essential for the safe and effective performance of the duties and responsibilities of their particular jobs." (Doc. 99-2, CM/ECF pp. 2-3).

A fair inference from the document is that the USMS considered the CSO hearing requirements as essential to the class of jobs in law enforcement, and not just for the CSO job. We conclude that this memo would permit a reasonable jury to conclude that the USMS regarded Plaintiff as substantially limited in the life activity of working and

that therefore summary judgment must be denied on this aspect to Plaintiff's discrimination claim against MVM.

MVM objects that this evidence should not be considered for the following reasons. First, Plaintiff did not make it part of the record when he opposed the first motions for summary judgment by MVM and the federal defendants. Second, we decided that the current summary judgment motion would be decided on the record submitted to the Third Circuit.

As to Defendant's first argument, since it concedes that Plaintiff produced the Kraus memo to it during the discovery period, (doc. 100, MVM's reply brief, CM/ECF p. p. 4), we see no reason why the memo cannot be used now simply because Plaintiff did not use it in earlier summary judgment proceedings. In *Bankers Trust Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 950 (3d Cir. 1985), the Third Circuit said that a district court may consider upon remand, "as a matter of first impression, those issues not expressly or implicitly disposed of by the appellate decision." *See also Eichorn v. AT&T Corp.*, 484 F.3d 644, 657 (3d Cir. 2007)(quoting *Bankers Trust*). Here, the court of appeals remanded for us to resolve the discrimination claim against MVM based on its contractual relationship with the USMS. Treating the claim as a matter of first impression, we see no reason why we cannot consider evidence produced in discovery and timely presented in opposition to a motion seeking summary judgment on the claim.

As for Defendant's second argument, we did not decide that its summary judgment motion would only be decided on the basis of the previous summary-judgment record. We only decided that we would not grant Plaintiff's request to allow additional discovery. (Doc. 90, Order of September 9, 2010). We therefore consider the Kraus memo for its relevance to Plaintiff's claim.

In that regard, Defendant does argue against its probative value, asserting that it says nothing about the USMS's perception of Fromm's ability to do law enforcement jobs because "there is no evidence that the USMS believes that the Kraus memo applies to any other job other than that of CSO." (Doc. 100, reply brief, CM/ECF p. 10). We disagree, for the reason stated above. The document attached to the memo connects the CSO hearing requirements to a class of law enforcement jobs in general, not just the CSO job, and would show that the USMS regarded Plaintiff as substantially limited in the major life activity of working.

We will therefore deny MVM summary judgment on this aspect of Plaintiff's discrimination claim.

/s/William W. Caldwell
William W. Caldwell
United States District Judge

Date: January 10, 2011

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALAN J. FROMM, | : | |
|     Plaintiff | : | |
| vs. | : | CIVIL NO. 1:CV-04-1315 |
| MVM, INC. | : | |
| BENINGO G. REYNA, in his official capacity as Director of the United States Marshals Service, | : | |
| JOHN ASHCROFT, in his official capacity as Attorney General of the United States and chief administrative officer of the United States Department of Justice, | : | |
|     Defendants | | |

*O R D E R*

AND NOW, this 10th day of January, 2011, upon consideration of defendant, MVM, Inc.'s, motion for summary judgment, it is ordered that:

    1. The motion is granted as to Plaintiff's discrimination claim based on the USMS's regarding Plaintiff as substantially limited in the major life activity of hearing and the Clerk of Court shall enter judgment in favor of Defendant MVM, Inc., and against Plaintiff on this claim.

    2. The motion is denied as to Plaintiff's discrimination claim based on the USMS's regarding Plaintiff as substantially limited in the major life activity of working.

                                              /s/William W. Caldwell
                                              William W. Caldwell
                                              United States District Judge